The City Council of Augusta *vs.* Sweeney.

The CITY COUNCIL OF AUGUSTA, plaintiff in error, *vs.* M. E. SWEENEY, defendant in error.

Where a public office is created by the authorities of a municipal corporation :

*Held,* That an incumbent of the office does not have such an interest in the salary as that the corporation cannot, at its discretion, abolish the office, and by so doing deprive him of his right to tender his services and demand his salary, for the full time for which he was elected.

Constitutional law.    Officers.    Vested Rights.    Before Judge GIBSON.    Richmond Superior Court, June Term, 1870.

An ordinance of the city of Augusta required its City Council to elect, biennially, on the second Saturday in January, a hospital physician, who should have charge of the City Hospital.    His salary was to be " such as Council may annually annex to the office."    This ordinance provided for his removal from office for malpractice, etc., as other officers might be removed.    In January, 1868, Dr. Sweeney was elected hospital physician under this ordinance.    The salary was then $1,200 00, but in August, 1868, it was increased to $1,600 00, because of certain additional duty put upon him.    He served as hospital physician during 1868, and to the 5th of January, 1869.    On that day the City Council, by ordinance, abolished said office.    The reason for this was that they had made a contract with the Medical College of Georgia by which its faculty was to perform the duties of the hospital physician at a new hospital conveyed to the city by the college, and the old hospital was to be abolished. After this action the Mayor requested Sweeney to visit the hospital till the 13th of January, 1869, and said that then the faculty would relieve him.    Sweeney notified the City Council of his willingness to do the duties of said office during 1869, and demanded his salary for 1869.    Upon their refusal to pay it he sued thereor.

Besides the foregoing facts it appeared on the trial that the public patients were taken care of by one of the college

faculty, who made monthly reports to the City Council just as Sweeney had done; but no ordinance required either of them to make such reports.

Plaintiff's counsel requested the Court to charge the jury, 1st. That said election of Sweeney was a contract between him and defendants for two years. 2d. That he could be removed from said office only for malpractice, after trial and conviction. 3d. If Sweeney was prevented from performing the contract by defendants, without his fault, he could recover the salary for 1869. 4th. That they could not remove Sweeney and put another in his place until after such trial and dismissal from office upon conviction. 5th. That before the abolition of the office could be used as a defense it must be really abolished, and if the office was not abolished, but a simple transfer was made, as a better arrangement, this could not prevent Sweeney's recovering. The Court gave all of said requests in charge to the jury.

He was requested by the defendant's counsel to charge the jury that, if the office was created by ordinance it might be abolished by a repealing ordinance. He told the jury that that was true, *provided* only such repeal did not violate rights already accrued under the contract. The jury found for the plaintiff for $1,400 00. Defendants moved for a new trial upon the grounds that the Court erred in charging as requested by plaintiff's counsel, and in qualifying the request of defendant's counsel as he did, and for other grounds immaterial here. The Court refused a new trial, and that is assigned as error.

A. R. WRIGHT, for plaintiffs in error.

H. CLAY FOSTER, for defendant in error. The charge was right: 4 Dev. N. C. R., 18, 19.

McCay, Judge.

It is only in a very loose sense that the relation between the holder of an office and the public can be said to be one of contract. ' One of the very first ingredients of a contract is wanting, to-wit: that of mutuality. The officer may, at any time, resign, move away, or die, and the public has no remedy. So, too, the public may, at any time, discharge the incumbent, provided that discharge is within the power under the law of the *public agent* who makes the discharge. The public always acts through agents, and those agents only have such powers as the public has conferred upon them. If the public has, by law, made the officer removable at the will of some other public agent, the removal may be made. If, by law, the removal is only by some other mode then that mode must be resorted to. It is not a matter of right in the officer, but a question of power in the agent who undertakes the removal.

It was upon this that the case in *Shaw vs. Mayor and Council of Macon,* 21 Georgia Reports, 280, went. The City Council did not, by law, have the right to remove, hence, there was no removal, and the marshal was entitled to his salary. It will, we think, be found that this is the ground upon which the cases have been put, where decisions have been made, seemingly in favor of the right of the officer to his pay after removal, and not upon the ground of contract: 4 Dev. N. C. R., 18, 19 ; 10 Howard, 414.

It has always been held in Georgia, that the people in convention might abolish even a constitutional office. If the office be created by legislative enactment, the Legislature may abolish it; and if it be created by municipal authority, that same authority may abolish it. This is the clear deduction from the case of Butler vs. the State of Pennsylvania, 10 Howard, 414. See, also, 6 Sergeant's Reports, 322 ; 5 Watts and Sergeant, 418. We think, therefore, that, as there was evidence that this office had been abolished by the proper

authority, the plaintiff in the suit had no right, by contract, to be interfered with, and the Court erred in qualifying, as he did, his charge, that the City Council had the right to abolish the office of hospital physician.

The right of an incumbent of an office does not depend on any contract, in the sense of a contract, in the sense of a bargain between him and the public. His right depends on the law, under which he holds. If that law be one capable of being repealed by the power which acts, the right of the officer is gone. That clause of the bill of rights, in our own Constitution, which prohibits the passage of a law affecting private rights, or rather the varying of a general law, by special legislation, so as to affect private rights, cannot affect this question, since this law, ordinance of Council, which was repealed, was not, itself, a general law, but a law creating a particular office, which the power creating it had the same power to abolish as it had to create.

Judgment reversed.